**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-0952-REB-MJW

JIMMIE WELLMAN,

    Plaintiff,

v.

RICK RAEMISCH, Executive Director of the DOC (in his official capacity),
MAURICE FAUVEL, in his personal capacity,

    Defendant.

---

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

---

**Blackburn, J.**

    The matter before me is the **Motion for Summary Judgment** [#69][1] of the defendants filed May 5, 2014. Repeatedly, the plaintiff has been granted extensions of time to file a response to the motion. To date, he has not filed a response. The plaintiff is acting *pro se.* Therefore, I construe his pleadings and papers generously and with the leniency due *pro se* litigants, see **Erickson v. Pardus**, 551 U.S. 89, 94 (2007); **Andrews v. Heaton**, 483 F.3d 1070, 1076 (10th Cir. 2007); **Hall v. Belmon**, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing **Haines v. Kerner**, 404 U.S. 519, 520-21 (1972)).

    For the reasons discussed below, I find that the plaintiff has forfeited his right to file a response to the motion. Thus, I grant the motion for summary judgment.

---

[1] "[#69]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## I.  JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  **FED. R. CIV. P.** 56(a); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  **Id**. at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  **Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999).  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.  **Rice v.**

*United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 120 S.Ct. 334 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Id.*

### III.  FACTS

From the evidence of record, the following facts are undisputed. The plaintiff, Jimmie Wellman, is an inmate in the Colorado Department of Corrections (DOC). He suffers from Hepatitis C. Initially, Mr. Wellman was approved for Hepatitis C treatment through the DOC on December 29, 2011. *Affidavit of Maurice Fauvel, D.O.* [#16-1], ¶ 7.[2] Mr. Wellman began Pegasys Proclick 180 MCG/0.5 ML Peginterferon (Interferon) and Ribavirin treatment on August 24, 2012. ¶ 8.[3] During the course of his treatment, Mr. Wellman sometimes has experienced vomiting, sometimes has vomited blood, and has exhibited other symptoms of internal bleeding . He reported these events to his treatment providers. Hepatitis C can cause nausea and the Ribavarin treatment which Mr. Wellman took for a period of time can exacerbate nausea and vomiting. ¶ 10. The physical action of retching and heaving during vomiting can cause bleeding. *Id.* Dr. Fauvel is unable to attribute the bleeding experienced by Mr. Wellman to any alleged "gaps" in treatment. ¶ 11.

On September 14, 2012, the Interferon and Ribavarin treatment was discontinued due to the reports of Mr. Wellman of continued vomiting of blood and other symptoms. ¶ 12. On October 23, 2012, gastric bands were placed by Dr. Vahil for

---

[2] I cite the Fauvel Affidavit by paragraph number, *e.g.* ¶ 1.

[3] In his complaint [#8], Mr. Wellman refers to these drugs as Pegasys and Copegus. Complaint [#8], ¶ 7.

3

Grade II and Grade III esophageal varices.  This was done to stop GI[4] bleeding.  ¶ 13.  On January 15, 2013, Dr. Vahil placed additional bands to treat Grade II varices.  ¶ 14.  These varices could cause the bleeding Mr. Wellman says he was experiencing.  ¶ 15.  Individuals with Hepatitis C are more prone to developing these varices. *Id*.

On January 23, 2013, after placement of the gastric bands was completed, Mr. Wellman was restarted in Interferon and Ribavirin treatment.  ¶ 16.  On February 17, 2013, Mr. Wellman was moved from the Sterling Correctional Facility to Denver Health Hospital after producing a specimen of vomited blood to medical staff.  ¶ 18.  On March 5, 2013, after brief hospital and infirmary stays, Mr. Wellman was moved back to the Sterling Correctional Facility.  ¶ 19.  In late March 2013, Mr. Wellman was hospitalized again, presenting with signs and symptoms of a gastrointestinal bleeding.  ¶¶ 20 - 21.  Due to the recent bleeding and esophageal varices, Ribavirin and Interferon were discontinued.  ¶ 22.

On April 12, 2013, Dr. Fauvel spoke with the Hepatitis C Committee of the DOC and the Chief Medical Officer of the DOC, Dr. Tim Creany, about the continuation of Mr. Wellman's Hepatitis C treatment.  ¶ 25.  It was decided that treatment would be discontinued and further lab evaluations and another GI consult would be ordered to determine the eligibility of Mr. Wellman for continued treatment and the safety of continuing the Hepatitis C treatment.  ¶ 25.  At that time, it was decided that putting Mr. Wellman back on the treatment while he is experiencing bleeding would do more harm than good.  ¶ 26.  Dr. Fauvel met with Mr. Wellman to discuss his continuing care.  ¶ 27.  Tests done on April 17, 2013 showed that Hepatitis C virus was virtually absent from

---

[4] "GI" is the medical initialism for gastrointestinal.

Mr. Wellman's blood. ¶ 30. Given this test result, Dr. Fauvel concluded that further Hepatitis C treatment was not needed as of April 2013. ¶ 35. That remained true as of May 2014. *Motion for Summary Judgment* [#69], Exhibit A (Castellano Affidavit), ¶ 3. however, Mr. Wellman continued to be monitored by GI specialists. *Castellano Affidavit*.

In his complaint [#8], Mr. Wellman alleges that he has been denied consistent and proper treatment for his Hepatitis C. He claims his internal bleeding would stop if his Interferon and Ribavirin treatment was resumed.[5] He claims the defendants have failed to treat his treatable condition. He claims his condition will result in his death if his treatment is not resumed and continued. He claims also that it is cruel and unusual punishment when he is not permitted to clean his body and his bed after he has been bleeding badly. He seeks a declaratory judgment declaring that the past actions of the defendants violated the Eighth Amendment. *Complaint* [#8], ¶ 25. In addition, he seeks an injunction requiring the defendants to provide Mr. Wellman with Pegasys, Copegus, Nadol, and Lactalose. *Id.*, ¶ 26.

### IV.  ANALYSIS

#### A.  EIGHTH AMENDMENT

The Eighth Amendment to the Constitution of the United States prohibits "cruel and unusual punishments." **U.S. CONST**. amend. VIII. As applied to prisoners, the Eighth Amendment guarantees "humane conditions of confinement guided by 'contemporary standards of decency.'" **Penrod v. Zavaras**, 94 F .3d 1399, 1405 (10th Cir. 1996) (quoting **Estelle v. Gamble**, 429 U.S. 97, 103 (1976)). Prison officials must

---

[5] Again, these are the drugs to which Mr. Wellman refers as Pegasys and Copegus.

"ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care[.]" **Barney v. Pulsipher**, 143 F.3d 1299, 1310 (10th Cir. 1998). In particular, the Eighth Amendment right to adequate medical care is violated where prison officials are deliberately indifferent to a prisoner's serious medical needs. **Helling v. McKinney**, 509 U.S. 25, 35, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993); **Estelle**, 97 S.Ct. at 291.

A viable Eighth Amendment claim has both an objective and a subjective component. The plaintiff must present evidence sufficient to satisfy both to proceed. **Callahan v. Poppell**, 471 F.3d 1155, 1159 (10th Cir. 2006).

First, the plaintiff must show that he was deprived of a medical need that is, objectively, "sufficiently serious." **Farmer v. Brennan**, 511 U.S. 825, 834 (1994). "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." **Ramos v. Lamm**, 639 F.2d 559, 575 (10th Cir. 1980) (internal citation and quotation marks omitted). Generally, an illness such as Hepatitis C presents a serious medical need. However, the nature and extent of treatment needed at any particular time remains open to question.

Second, the plaintiff must demonstrate that each defendant recognized and disregarded an excessive risk to the health or safety of the plaintiff. **Farmer**, 511 U.S. at 837. The subjective component implicates the defendant's state of mind and is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." **Beauclair v. Graves**, 227 Fed. Appx. 773, 776 (10th Cir. 2007) (quoting **Mata v. Saiz**, 427 F.3d 745, 752 (10th Cir. 2005)). Substantial

harm includes "lifelong handicap, permanent loss, or considerable pain." ***Garett v. Stratman***, 254 F.3d 946, 950 (10th Cir. 2001). Stated differently, a plaintiff will satisfy this element only when he shows that the defendant both was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also dr[e]w the inference." ***Farmer***, 511 U.S. at 837.

Thus, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." ***Whitley v. Albers***, 475 U.S. 312, 319 (1986). Mere negligence, even negligence that constitutes medical malpractice, is not sufficient to state a claim. ***Estelle***, 429 U.S. at 105 - 106; ***see also Duffield v. Jackson***, 545 F.3d 1234, 1238 (10th Cir. 2008); ***Perkins v. Kansas Department of Corrections***, 165 F.3d 803, 811 (10th Cir. 1999). Moreover, because a prison doctor remains free to exercise his independent professional judgment, "[m]edical decisions that may be characterized as classic examples of matters for medical judgment . . . are beyond the [Eighth] Amendment's purview," ***Callahan v. Poppell***, 471 F.3d 1155, 1160 (10th Cir. 2006) (citations and internal quotation marks omitted). ***See also Worrell v. Bruce***, 296 Fed. Appx. 665, 670 (10th Cir. 2008) (same for nursing decision of prison nurse). Therefore, "a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate needs and receives does not support a claim of cruel and unusual punishment." ***Ramos***, 639 F.2d at 575. Similarly, a prisoner does not have a valid claim of deliberate indifference simply because he was denied a particular course of treatment. ***Callahan v. Poppell***, 471 F.3d 1155, 1160 (10th Cir. 2006).

Nothing in the record before me supports an inference of this type of culpable,

subjective mental state on the part of the defendants, Rick Raemisch or Dr. Maurice Fauvel. Dr. Castellano and Dr. Fauvel have provided a detailed description of the course of treatment provided to Mr. Wellman and an explanation for changes in that treatment. In addition, they have provided a reasonable explanation for the cessation of treatment using Interferon and Ribavirin. Even when viewed in the light most favorable to Mr. Wellman, the evidence in the record cannot be seen as demonstrating that Mr. Wellman was denied treatment for a serious medical need. Even when viewed in the light most favorable to Mr. Wellman, the evidence in the record cannot be seen as demonstrating that either defendant knew of and disregarded an excessive risk to the health or safety of Mr. Wellman. Thus, the defendants are entitled to summary judgment on the Eighth Amendment claim of Mr. Wellman.

### B. FORFEITURE OF RESPONSE

The motion for summary judgment was filed May 5, 2014. On four occasions since the motion for summary judgment was filed, Mr. Wellman has sought and been granted an extension of time to file a response to the motion for summary judgment. His motions for extension of time bear docket numbers [#73, #79, #82, and #91]. Those motions are based generally on the need of Mr. Wellman for frequent medical treatment and the fact that Mr. Wellman is acting *pro se*. In none of these motions does Mr. Wellman say that he does not have a copy of the motion for summary judgment. The most recent such extension of time granted to Mr. Wellman expired on March 13, 2015. *Order* [#92] filed February 27, 2015.

On March 12, 2015, Mr. Wellman filed his fifth motion [#94] for an extension of time to file a response to the motion for summary judgment. In this motion, he claims

for the first time that he does not have a copy of the motion for summary judgment. He says he needs a copy of the motion in order to file a response. Initially, the response of Mr. Wellman was due by May 26, 2014. Nearly ten months later, after repeated extensions of that deadline for various other reasons, Mr. Wellman now claims for the first time that he can not respond to the motion because he does not have a copy of the motion.

Given these circumstances, I find and conclude that Mr. Wellman has forfeited[6] his right to file a response. Mr. Wellman has had 10 months to file a response, representing more than ample opportunity to do so. He has had literally months to request a copy of the motion for summary judgment. However, prior to March 12, 2015, he raised no such issue and made no such request. Instead, despite this extended opportunity to do so, he asserted other reasons for his multiple extensions of time. He could and should have noted much earlier the fact – if it is a fact – that he does not have a copy of the motion to which he needs to file a response. Much earlier, he could have sought a copy of the motion from the court. However, he failed inexplicably and inexcusably to do any of these things in a timely fashion. Thus, I find and conclude that for want of a sufficient excuse or explanation, Mr. Wellman has failed to file a timely response and, concomitantly, has now forfeited his right to file a response.

## V. CONCLUSION & ORDERS

---

[6] "[W]aiver is accomplished by intent, but forfeiture comes about through neglect." **U.S. v. Carrasco-Salazar**, 494 F.3d 1270, 1272 (10th Cir.2007) (internal quotation and brackets omitted). Forfeiture, as opposed to waiver, occurs "when there is no suggestion of a knowing, voluntary failure to raise the matter." **U.S. v. Goode**, 483 F.3d 676, 681 (10th Cir.2007). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." **U.S. v. Olano**, 507 U.S. 725, 733 (1993) (internal quotation and citation omitted).

Viewing the undisputed facts in the record in the light most favorable to the plaintiff, no reasonable fact finder could find in favor of the plaintiff on his Eighth Amendment claim, the only claim in his complaint [#8]. Thus, the defendants are entitled to summary judgment on this claim.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Motion for Summary Judgment** [#69] of the defendants filed May 5, 2014, is granted;

2. That judgment shall enter in favor of the defendants, Rick Raemisch and Maurice Fauvel, against the plaintiff, Jimmie Wellman;

3. That the defendants are **AWARDED** their costs, to be taxed by the clerk of the court in the time and manner dictated by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

4. That this case is closed.

Dated March 19, 2015, at Denver, Colorado.

**BY THE COURT:**

*[signature: Bob Blackburn]*

Robert E. Blackburn
United States District Judge